# CASES DECIDED

### IN THE

# Supreme Court of · Appeals

### OF VIRGINIA.

#### Wytheville.

### CITY OF RICHMOND V. RICHMOND SAND AND GRAVEL CO.

#### June 13, 1918.

#### Absent, Burks, J.

1. NUISANCES—*Limitation of Actions—Laches—Estoppel.*—In a suit for an injunction against a nuisance and for damages, where the nuisance was caused by defendant's sewer emptying into a creek which passed through plaintiff's land, defendant set. up as grounds of defense the statute of limitations, laches and estoppel. It appeared that a 24-inch sewer was built after August 15, 1911, when plaintiff bought the property, and plaintiff's bill was filed November 15, 1914, within less than five years from that date. Before the installation of the 24-inch sewer there had been a 12-inch sewer, but very little sewage flowed through it—not enough to cause the injury complained of. So that, in point of fact, the nuisance, which it was the purpose of this suit to abate, was created within less than five years before its institution.

   *Held:* That the chancery court correctly overruled the defenses of laches, estoppel and the statute of limitations.

2. EASEMENTS—*Drains and Sewers—Construction of Deed.*—A deed conveying part of a tract of land (consisting of 47.5 acres) provided that the grantee should have a right to construct a sewer through the property of the grantor. The deed contemplated the use of the easement not only for the drainage of the 47.5 acres conveyed, but also as essential to the drainage of an incorporated town, and other lands not included in that particular tract.

1

*Held:* That the easement was not appurtenant to the 47.5 acres conveyed by the deed. It was either an easement in gross, or else extends the area of the land to which it is appurtenant, so as, at least, to include land naturally drained by the channel. If it is to be regarded as an easement in gross, it is still "an interest in land,", and, therefore, may be disposed of by deed or will under the statutes of this State. Code 1904, sections 2418, 2548.

Appeal from a decre of the Chancery Court of city of Richmond. Decree for complaint. Defendant appeals.

*Reversed in part and affirmed in part.*

The opinion states the case.

*H. R. Pollard* and *Geo. Wayne Anderson,* for the plaintiff in error.

*S. A. Anderson* and *Hill Carter,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

On November 15, 1914, appellee, the Richmond Sand and Gravel Company, which we shall refer to as plaintiff, filed its bill against appellant, the city of Richmond, designated as defendant, and the Richmond Land and Improvement Company, in which it showed: That on August 15, 1911, it purchased from the Richmond Locomotive Works 131.7 acres of land in Henrico county, adjoining Highland Park, which land, along with that town, by annexation proceedings became a part of the city of Richmond November 5, 1914. The deed stipulated that there should be no pollution of the stream flowing through the land, which would render it unfit for use, or offensive to any lower riparian owner, especially to the grantor or its grantees. Afterwards, against the objection of plaintiff, the town of Highland Park

constructed a sewer leading into its land and emptying into Shockoe creek, which is offensive to the smell and dangerous to health and destructive to the value of its land on both sides of the creek. That the land is very valuable for its large deposits of sand and gravel, which plaintiff at one time undertook to work and utilize, but could not on account of the offensive smell. That machinery and structures purchased at great expense for working the sand and gravel were abandoned on account of the sewage, and loss amounting to many thousands of dollars was sustained. That employees of plaintiff were made sick, and forced to vacate a house owned by plaintiff on the land and refused to work by reason of the stench from the sewage. That the flow of sewage has not only been continued against the objection of plaintiff, but has been increased by the construction of other sewers by the town of Highland Park, which have continued to empty their sewage into the original sewer, and has thereby increased the flow of sewage over plaintiff's land. That the nuisance has rendered the deposits of sand and gravel on the land valueless and unfit for use, and prevented plaintiff from either working them or selling them to other persons. That on June 4, 1912, plaintiff conveyed 47.5 acres of its land next to Highland Park to the Richmond Land and Improvement Company, and the sewage from the town is emptied on the land so conveyed, but continues to flow through plaintiff's part of the land for the distance of 2,100 feet, and is dangerous and destructive to health and the value of its property. That defendant and its officers have been notified of plaintiff's objections to the sewer, but still allow its use, to the great damage of plaintiff and its property. The bill prays for an injunction against the nuisance and for damages.

At the request of the defendant, the Highland Park Development Corporation and J. M. Atkinson and wife were made parties to the suit.

Defendant, by answer, sets up three grounds of defense:

"(1) That the complainant and those under whom it claims are guilty of laches for their failure to assert by suit their right against the use of the sewer of the drain, ravine and branch by those under whom respondent claims, it being a fundamental principle of a court of equity. that, 'Nothing can call forth a court of equity into activity but conscience, good faith and reasonable diligence.'

"(2) That the statute of limitations is a bar to the prosecution of this suit by the complainant, more than five years having elapsed since the creation of the alleged nuisance * * * And,

"(3) That complainant is estopped by its conduct and acquiescence in the use of the drain, ravine and branch as an open sewer, it having been the duty of complainant, or those under whom it claims, many years ago to have objected to the use of the said drain, ravine or stream for sewer purposes."

Evidence was taken, and in consequence of developments made by the testimony of one of the witnesses (Civil Engineer E. D. Redd), defendant a few days thereafter moved the court for leave to file an amended and supplemental answer, which was granted.

The supplemental answer, in substance, averred: That in pursuance of a resolution of the council of defendant, approved May 14, 1915, the city attorney was authorized to contract for the purchase of all the sewers, sewer rights and easements owned by the Highland Park Development Corporation laid or maintained in the streets or alleys of Highland Park addition; that defendant had contracted with the Highland Park Development Corporation, for the consideration of $300, for the purchase of all right, title and interest in and to an easement which the Highland Park Development Corporation owns, acquired by the East End Building Corporation, which it acquired in a deed from

the Richmond Land and Improvement Company, acquired by the latter by deed from plaintiff and J. M. Atkinson and wife, of June 4, 1912, which easement was described in that deed as follows: "The right to run a sewer pipe not exceeding thirty inches in diameter, which the said party of the third part (Richmond Land and Improvement Company) has a right to begin at a point on the land hereby conveyed (designated by a red star on the plat hereto attached) through the grounds of the said party of the first part, on and along the southwest side of Shockoe creek, within twenty feet of the southwest side of said creek; provided, however, said party of the first part is not to be liable for any damages from persons complaining of the use of said sewer, which is to run underground not less than two feet below the surface, except when on sudden depressions, and when they occur, not less than twelve inches below the surface. Said party of the first part and his vendees are to be entitled to connect their sewer pipes with said sewer of the said party of the third part free of charge. If the said party of the third part receives, or is paid any amount for the use of said sewers herein stipulated for, from Highland Park or others not occupying any part of the land herein conveyed, then and in that event, one-half of said amount so received or paid is to belong to and be paid to said party of the first part." The supplemental answer also averred that defendant was entitled to avail itself of this easement and right to construct the sewer through and along the property of plaintiff, and that if constructed and maintained it would entirely relieve any future pollution of the branch in question as well as of Shockoe creek.

Defendant maintained that if the court deemed the defenses set up in its original answer inadequate it should be permitted to construct a sewer along the easement for the purposes indicated; and prayed that, if necessary, the supplemental answer be treated as a cross-bill.

The Highland Park Development Corporation, in its answer, set up the right in itself or its assignee to avail of the foregoing stipulation in the deed of June 4, 1912.

On November 1, 1916, the chancery court entered one of the decrees appealed from, and on December 13, 1916, passed a decree refusing to rehear the former decree. By the first mentioned decree the court expressed the opinion that plaintiff was entitled to a perpetual injunction restraining the defendant from emptying and carrying its sewage through, over, along and upon plaintiff's land, but refused to award the injunction at that time on account of the serious consequences which might ensue therefrom, and decreed that defendant should at once proceed to acquire by purchase or condemnation proceedings, or otherwise, an outlet or outlets and conduits for such sewage, so that it would cease to be a nuisance or injury to plaintiff's property; and in the event of its failure to carry out and perfect that requirement of the decree within a reasonable time, that plaintiff should be at liberty to apply to the court for the purpose of obtaining a perpetual injunction against the defendant as above indicated. The decree also contained a reference to a commissioner in chancery to ascertain and report what damages, if any, plaintiff had suffered and was entitled to recover from defendant by reason of the injuries complained of.

The learned chancellor, in his memorandum opinion, gives an accurate summary of the salient facts of the case. He shows that the sewer which caused the nuisance was not the twelve-inch sewer referred to in defendant's answer as exhibit No. 6; "that after the incorporation of Highland Park in 1908, it began the construction of a general paving and sewerage system; and in 1911 or 1912, upon the complaint of some of the citizens residing near this open ravine of its offensiveness, a large 24-inch sewer was constructed from the stack at Third avenue and Dill road

down this ravine, the sewer ending at the corporate line of Highland Park and emptying into the open ravine. That there is now a continuous flow of sewage and filth in an open ditch a distance of five or six hundred yards into Shockoe creek at the plant of the plaintiff."

This sewer was built after August 15, 1911, when plaintiff bought the property, and the bill, as we have seen, was filed November 15, 1914, within less than five years from that date. Before the installation of the 24-inch sewer the ravine was usually dry and very little sewage flowed through it—not enough to cause the injury complained of. So that, in point of fact, the nuisance (which it is the purpose of this suit to abate) was created within less than five years before its institution. We are, therefore, of opinion that the chancery court correctly overruled the defenses of laches, estoppel and the statute of limitations, and accurately classified the case in judgment as coming within the influence of the line of authorities of which *Face* v. *Cherry*, 117 Va. 41, 84 S. E. 10, Ann. Cas. 1917 E, 418; *McKinney* v. *Trustees, etc.*, 117 Va. 763, 86 S. E. 115; and *N and W. Ry. Co.* v. *Allen*, 118 Va. 428, 87 S. E. 558, are types, and is not controlled by *Virginia Hot Springs Co.* v. *McCray*, 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas. 179.

But we are further of opinion that the rights of defendant by virtue of its purchase of the easement of a sewer line through the land of plaintiff ought first to have been determined before the decree appealed from, directing defendant to acquire an outlet or outlets and conduits looking to the installation of an adequate sewer system to abate the nuisance complained of, and ordering an inquiry of damages, was entered.

And with the view of expediting the final determination of this controversy, which affects the interests of the citizens of the Highland Park addition to the city, and the pub-

lic, as well as the rights of the immediate litigants, we deem it advisable to pass upon the legal question raised by defendant's supplemental answer.

Under the circumstances of this case and in view of the objects obviously intended to be accomplished by the stipulation in the deed of June 4, 1912, hereinbefore set forth, we cannot assent to the proposition that the. easement granted by that instrument could only be acquired by and transferred to an alienee of the land conveyed by that deed. The setting of the transaction in its entirety plainly shows that the supposed dominant tenement (the 47.5 acre tract), to which we are told the easement is alone appurtenant, constitutes only a link in a chain of properties, the owners of which possess, in common, natural rights of drainage along the proposed sewer line inherent to the location of their respective holdings, and not exclusively dependent for existence upon the work of man. The larger part of the land formerly included within the limits of the town of Highland Park, by reason of its location and the natural lay of the water-shed must seek outlet for drainage along a waterway or channel passing through the properties of the grantor and grantee in the deed referred to. Hence, in a broader sense, the territory mentioned constitutes a dominant section with respect to the outlet provided by nature for the common benefit of all affected by those natural conditions. 9 R. C. L. (III), p. 742.

The situation is such that it could not have been within the contemplation of the parties, that this easement of drainage should be indissolubly annexed solely to the 47.5 acres of land.

The correctness of this wider construction that we are disposed to place upon the provision of the grant is strengthened by the language: "If said party of the third part receives or is paid any amount for the use of said sewer herein stipulated for from Highland Park or others not oc-

cupying any part of the land herein conveyed, then and in that event one-half of said amount so received or paid is to belong to and be paid to the party of the first part." We freely admit that if the premises of counsel, that the easement was appurtenant only to the 47.5 acres, were correct, their conclusion would follow, and the easement could not be divorced from the particular tenement by separate grant. 1 Minor on Real Prop., p. 117. But, as we have seen, the deed contemplated the use of the easement not only for drainage of the smaller tract, but also as essential to the drainage of Highland Park, and other lands not included in the particular tract. This view removes the easement from that class of appurtenant easements to which the principle invoked applies, and either constitutes it an easement in gross, or else extends the area of the land to which it is appurtenant, so as, at least, to include land naturally drained by the channel. If it is to be regarded as an easement in gross, it is still "an interest in land" and, therefore, may be disposed of by deed or will under the statutes of this State. Code, secs. 2418, 2548; 1 Minor on Real Prop., p. 115.

So that, in any aspect of the case, defendant was within its rights in acquiring the easement without purchasing the 47.5 acres of land. If, however, the city shall elect to use the easement in installing a sewer system through the land of plaintiff by virtue of its purchase, it must take the right subject to the obligation imposed by the deed of June 4, 1912.

The effect of our conclusions with respect to the questions raised by defendant's assignments of error incidentally disposes of the cross-error assigned adversely to plaintiff's contention.

For these reasons the decrees appealed from must be reversed and the case remanded for further proceedings in accordance with the views expressed herein.

*Reversed in part and Affirmed in part.*